IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| COLONY INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | CASE NO. 3:06 cv 555-VPM |
| ) | |
| v. ) | |
| ) | |
| RONSHABUS GRIFFIN and HPC ) | |
| ENTERTAINMENT GROUP, INC., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT RONSHABUS GRIFFIN'S BRIEF IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT**

**FACTS**

On November 6, 2005, Defendant Ronshabus Griffin was a patron at the Soul Inn, a club in Macon County, Alabama, owned and operated by Co-Defendant HPC Entertainment Group, Inc. (hereinafter referred to as "HPC"). (Griffin Affidavit) While Griffin was present in the club, an unknown person fired several shots from inside the club with a firearm. (Griffin Affidavit) Griffin was hit by one of those shots. (Griffin Affidavit) As a result of the bullet wound, Griffin suffered severe and substantial injuries, incurred considerable medical bills, and suffered lost wages. (Griffin Affidavit) On March 31, 2006, Griffin filed suit against HPC in the Circuit Court of Macon County.[1] (Exhibit "4" to Complaint)

---

[1] Initially, Griffin's Complaint was made against "Soul Inn, Incorporated." It has now been established that Soul Inn is merely the name of the club which was operated by HPC Enterprises, Inc., and HPC has now been substituted as the proper Defendant.

PDF created with pdfFactory trial version www.pdffactory.com

Griffin's Complaint contains five counts. (Exhibit "4" to Complaint) Count I states a claim for assault and battery committed by a fictitious defendant. (Exhibit "4" to Complaint, p. 2-3)

Count II alleges that HPC, being aware of "frequent past shootings and criminal acts" on its premises, undertook to provide security for the protection of its patrons and negligently failed to do so by allowing patrons to enter the Soul Inn with firearms. Count II makes no averment that the firearm in question was discharged as a result of an assault and battery. (Exhibit "4" to Complaint, p. 3)

In Count III Griffin alleges that that he was injured as a result of a negligent or a wanton act of a fictitious Defendant, in discharging a firearm inside the Soul Inn. Count III makes no allegation that Griffin was the victim of an assault and battery. (Exhibit "4" to Complaint, p. 4)

In Count IV, Griffin makes a claim against HPC for vicarious liability for the negligence of its agents who allowed a patron to enter the Soul Inn with a weapon. Count IV does not make any allegation that the shooting occurred as a result of an assault and battery. (Exhibit "4" to Complaint, p. 4)

In Count V, Griffin makes a claim against the Soul Inn for the negligent hiring, training and supervision of its agents who were providing security on the evening of the shooting. Count V does not allege that the shooting occurred as a result of an assault and battery. (Exhibit "4" to Complaint, p. 5)

HPC was insured under a general liability policy underwritten by Plaintiff, Colony Insurance Company (hereinafter referred to as "Colony"). (¶12 of Complaint and Exhibit "3" to Complaint) That policy provides that Plaintiff will "pay those sums that

2

PDF created with pdfFactory trial version www.pdffactory.com

the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Exhibit "3" to Complaint, p. 1 of 16) The policy also contains an assault and battery exclusion (added to the policy by endorsement) which provides that the policy affords no coverage for any injury arising from:

> (1) Assault and Battery committed by any person;
>
> (2) The failure to suppress or prevent assault and battery by any person;
>
> (3) The failure to provide an environment safe from assault and battery or failure to warn of the dangers of the environment which could contribute to assault and battery;
>
> (4) The negligent hiring, supervision or training of any person;
>
> (5) The use of any force to protect persons or property whether or not the "bodily injury" or "property damage" was intended from the standpoint of the insured or committed by or at the direction of the insured.
> (Exhibit "3" to Complaint, p. 1 of 1)

On June 21, 2006, Colony filed a Complaint for Declaratory Relief in this Court, seeking a declaration that Colony was neither obligated to defend or indemnify HPC for the claims made by Griffin in the Macon County case. Colony's contention that it is not obligated to defend or indemnify under the policy is based upon the assault and battery exclusion. (¶15 of Complaint)

The identity of the shooter is not known with certainty. (Carter Affidavit) No arrest has been made and no charges have been issued by any law enforcement agency. (Carter Affidavit) The reason for the shooting is unknown. (Carter Affidavit and Griffin

3

PDF created with pdfFactory trial version www.pdffactory.com

Affidavit) There is evidence that the shooter fired the weapon straight up into the air, as there were holes in the ceiling of the club beneath where the shooter was allegedly standing at the time he fired the weapon. (Carter Affidavit) There is a general dearth of information concerning this shooting, beyond the fact that shots were fired in the Soul Inn and that Griffin was hit by one of those shots. At this time, there appear to be no leads about the shooting and no charges or arrests are imminent or pending. (Carter Affidavit and Griffin Affidavit)

The Colony Policy contains, in addition to the provisions indemnifying HPC against damages because of bodily injury and property damage, a provision known as "Coverage C" which obligates Colony to pay the medical expenses of persons injured on the insured's premises, subject to certain exclusions, and subject to the policy limits as defined on the declarations page of the policy. (Exhibit "3" to Complaint, p. 7 of 16) The policy limits under Coverage C are $5,000.00. (Exhibit "3" to Complaint) It will be undisputed that Griffin was injured on the premises of HPC and that he incurred medical expenses in excess of $5,000.00 as a result of those injuries. Thus, Griffin should be entitled to recover $5,000.00 under the policy as reimbursement for his medical expenses. Griffin has filed a counterclaim against Colony seeking such recovery, and such counterclaim is also the subject of this Motion for Summary Judgment.

## ARGUMENT

### I. Summary Judgment Standard.

The party seeking summary judgment has the initial burden of demonstrating the basis for the motion and establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). Once this has been accomplished, the

4

PDF created with pdfFactory trial version www.pdffactory.com

burden of production shifts to the non-moving party.  The non-moving party must then "go beyond the pleadings" through depositions, affidavits or other discovery, to demonstrate that there is a genuine issue of material fact.  *Id.* 324.  A dispute of material fact is genuine if the evidence is such that a reasonable tryer of fact could find the evidence in favor of the non-moving party.  *Barfield v. Brierton,* 883 F.2d 923 (11th Cir. 1989).

**II.  There is insufficient evidence to support Colony's assertion that the assault and battery exclusion is applicable to the facts upon which Griffin's underlying claim against HPC is based**.

It is undisputed that Colony issued a general liability insurance policy covering HPC and that such policy was in effect on November 6, 2005, the date of the occurrence upon which Griffin's claim against HPC is based.  In the underlying lawsuit, Griffin makes claims against HPC for bodily injury and seeks damages for past and future medical expenses, pain and suffering, mental anguish, loss of earnings, impairment of ability to earn, and permanent injuries, disabilities and disfigurement.  All of the damages sought are alleged to be related to the "bodily injury" sustained by Griffin on November 6, 2005.

Colony contends that it is not obligated to defend or indemnify HPC because of the assault and battery exclusion.  In order to evaluate the scope of this exclusion, it is first necessary to examine how Alabama defines "assault and battery."  In *ex parte Atmore Cmty. Hosp.,* 719 So.2d 1190 (Ala. 1998), the Alabama Supreme Court held that in order to establish a battery, one must prove:  "(1) that the Defendant touched the Plaintiff; (2) that the Defendant intended to touch the Plaintiff; and (3) that the touching

5

PDF created with pdfFactory trial version www.pdffactory.com

was conducted in a harmful or offensive manner." *Id.* at 1193. Thus, there can be no assault without actual intent to touch another in a harmful or offensive manner. The case of *Harper v. Winston County*, 892 So.2d 346 (Ala. 2004) reiterates this view of assault and battery. *Harper* quoted, with approval, the case of *Singer Sewing Mach. Co. v. Methvin*, 184 Ala. 554, 63 So. 997 (1913), which stated as follows:

> As to what acts will constitute a battery in a case like this, the rule is well stated by Mr. Cooley in his work on Torts. He says: "A successful assault becomes a battery. A battery consists in an injury actually done to the person of another in an angry or revengeful or rude or insolent manner, as by spitting in the face, or in any way touching him in anger, or violently jostling him out of the way, or in doing any intentional violence to the person of another. The wrong here consist not in the touching, so much as in the manner or spirit in which it is done, and the question of bodily pain is important only as affecting the damages. 63 So. 997, 1000. *Harper v. Winston County,* 892 So2d 346, 353 (Ala. 2004)

Thus, in order for Griffin to have been the victim of an assault and battery, it must be proven that whoever discharged the firearm in the Soul Inn did so in a rude and offensive manner, and that the shooter intended to touch or harm some other person at the time he discharged the firearm.

Griffin's Complaint against HPC is attached hereto as Exhibit "A." As can be seen from a review of the Complaint, Count I asserts claims against several fictitious defendants for assault and battery. Griffin concedes that the claims asserted under Count I are not covered by the policy. Griffin's Complaint, however, goes on to make claims against HPC in negligence for allowing patrons and invitees of the Soul Inn to enter the club with loaded firearms. The Complaint asserts that HPC had undertaken to provide security in order to prevent invitees from bringing weapons into the club and that HPC

6

PDF created with pdfFactory trial version www.pdffactory.com

negligently performed those security functions resulting in weapons being brought onto the premises. The Complaint also asserts claims against HPC for vicarious liability based upon the negligence of its agents in allowing patrons of the Soul Inn to gain entry while carrying loaded firearms.[2]

Though admittedly there is no coverage for Counts I and V (the assault and battery count and the negligent supervision count), the remaining counts of the Complaint could potentially trigger coverage under the Colony policy, depending upon the specific facts giving rise to Griffin's injury. Count I aside, the Complaint does not allege how or under what circumstances the patron who brought the gun into the Soul Inn discharged it. Further, no evidence has been developed at this point to indicate how or why the gun was discharged. It is possible that the gun could have been discharged accidentally. It is also possible that the gun could have been discharged intentionally, but not under circumstances which would constitute an assault and battery. If, for example, the shooter intentionally discharged the firearm in a celebratory fashion (by firing it indiscriminately into the air, for example) then the discharge of the firearm, though amounting to wanton and reckless conduct, would not have constituted an assault and battery. Thus, the exclusion of Colony's policy would not apply.

The gravamen of Griffin's Complaint in Counts II through IV, is that HPC was negligent in allowing the shooter to enter the Soul Inn with a loaded weapon. In order for Griffin to successfully prosecute these counts, it is not essential, or even necessary, for Griffin to prove an assault and battery occurred. If the negligent act giving rise to

---

[2] The Complaint asserts in Count V that HPC negligently trained, hired and supervised its security personnel and a proximate result thereof, a loaded weapon was brought into the Soul Inn which subsequently resulted in Griffin's being shot. Griffin admits this claim is excluded from coverage under paragraph (4) of the Assault and Battery exclusion.

7

PDF created with pdfFactory trial version www.pdffactory.com

liability consisted of HPC (or its agents) allowing a loaded firearm to be surreptitiously brought into the Soul Inn, it does not matter, as far as HPC's liability to Griffin is concerned, whether Griffin was injured because the shooter: (1) committed an assault and battery; (2) allowed the firearm to be discharged negligently or wantonly; or (3) intentionally discharged the firearm in a celebratory fashion.  The only thing that Griffin must prove to recover is that HPC (or its agents) negligently allowed the firearm to be brought onto the premises, after having undertaken to ban such weapons from the club.

Griffin's position is strongly supported by the case of *Acceptance Insurance Company v. Brown,* 832 So.2d 1 (Ala. 2001).  In that case, Shaun Scott had brought a previous action against Gloria Brown for damages sustained when Brown shot Scott in the abdomen with a .32 caliber pistol.  Brown and her husband were the owners of a store which they expected to be burglarized on the evening of the injury.  They were waiting outside the store at night, with loaded weapons, when Scott showed up.  Mr. Brown fired "warning shots" in the direction of Scott and then commenced to beat Scott with his rifle.  Scott escaped and began running in Gloria Brown's direction.  Gloria Brown testified, "that she closed her eyes and 'drew up,' thinking Scott was going to attack her." *Id.* 7.  Her gun discharged and Scott was seriously injured.  Scott brought suit against Brown for his injuries and Brown reported the claim to her insurance company, Acceptance.  Acceptance declined to defend the case and a verdict was returned against Brown.  Brown then sued Acceptance for bad faith.  The Court, in upholding a verdict for Brown against Acceptance, held that there was a factual issue as whether Brown had committed an assault and battery.  Brown's testimony constituted evidence, the Court held, from

8

PDF created with pdfFactory trial version www.pdffactory.com

which a jury might have found that the shooting was accidental. Under such circumstance, Acceptance had a duty to defend and indemnify Brown.

In Griffin's underlying state court case against HPC, it is not necessary for Griffin to prove assault and battery in order to recover under Counts II through IV. Griffin nevertheless admits that Colony may avoid coverage under the policy if it can prove that Griffin was, in fact, injured as the result of an assault and battery. It is clear that under Alabama law, the burden of proving the applicability of any policy exclusion rests with the insurance company. *Fleming v. Alabama Farm Bureau Mut. Cas. Ins. Co.*, 293 Ala. 719, 310 So.2d 200 (1975); *Acceptance Ins. Co. v. Brown,* 832 So.2d 1 (Ala. 2001). There is no evidence, at this point, that an assault and battery occurred in the Soul Inn on the evening of November 6, 2005. No arrest has been made for an assault and battery or for any other crime and no charges have been brought. No evidence is available at this time to suggest whether the shots were fired in connection with an assault, were fired negligently, or were fired in celebration. There is evidence of bullet holes in the ceiling of the Soul Inn above where the shooter was standing which indicates a lack of intent on the part of the shooter to harm anyone, thus negating the possibility of assault. Whatever the reason the firearm was discharged, it is incumbent upon the Defendant to prove that the gun was fired in connection with an assault and battery, in order to avail itself of the exclusion. There is no evidence now before the court, which supports Plaintiff's contention that the gun was fired as a result of an assault and battery.

**III. Griffin is entitled to Summary Judgment on his counterclaim seeking benefits under "Coverage C" of the General Liability Policy.**

PDF created with pdfFactory trial version www.pdffactory.com

The general liability policy in question in this case is a standard liability policy providing coverage under three broad areas. Coverage A indemnifies the insured against suits seeking damages for bodily injury and property damage. Coverage B indemnifies against personal and advertising injury liability. Coverage C, upon which Griffin's counterclaim is based, provides that Colony will pay medical expenses for bodily injury caused by an accident occurring on the premises of the insured. Coverage C is not designed to indemnify the insured against any type of liability, but rather to pay the medical expenses of persons who are injured on the insured's premises.

Griffin contends he is a third party beneficiary under this section of the insurance contract. The Alabama law on third party beneficiaries is clear and straightforward. A Claimant may maintain an action on a contract to which he is not a party if the contract was made for the Claimant's benefit. *Anderson v. Howard Hall Co.,* 278 Ala. 491, 179 So.2d 71 (1965); *Mutual Benefit Health and Accident Assoc. of Omaha v. Bullard*, 270 Ala. 558, 120 So.2d 714 (1960). The only condition is that a Claimant who is not a party to the contract must have been intended to be directly, as opposed to incidentally, benefited by the contract. *Harris v. Board of Water and Sewer Commissions of Mobile*, 320 So.2d 624 (1975). It is evident that the coverage under part C of the policy in question is intended to provide a direct benefit to persons injured on the premises of HPC. Thus, Griffin would be a person within the group of peopled intended to be benefited by Coverage C of the policy. Under Alabama law, Griffin is plainly a third party beneficiary of this provision of the insurance agreement. As such, he is entitled to claim reimbursement for actual medical expenses flowing from his injury on the premises of the Soul Inn.

PDF created with pdfFactory trial version www.pdffactory.com

In response to the counterclaim, Colony asserts some twenty-four affirmative defenses, all of which are plainly frivolous and facially meritless, with the possible exception of the 14th defense which asserts that the counterclaim is barred by exclusions in the policy. Presumably, what Colony refers to in its 14th defense is the assault and battery exclusion. There is, however, no assault and battery exclusion that applies to Coverage C. It is true that in paragraph 2(g) of Coverage C incorporates by reference the exclusions contained in Coverage A of the policy. A review of the exclusions contained under Coverage A will reveal some 15 separate exclusions, labeled paragraphs (a) through (o), none of which apply to Griffin's claim. It is important to note that the assault and battery exclusion is not an exclusion contained within Section A of the policy, but is rather exclusion added by endorsement. The Assault and Battery Exclusion Endorsement plainly and unambiguously provides that it applies *only* to Coverage A and Coverage B. The assault and battery exclusion, by its specific terms, does not apply to Coverage C, on which Griffin's counterclaim is based. Therefore, such exclusion does not save Colony from this counterclaim.

Pursuant to the Colony policy, the liability limit under Coverage C is $5,000.00. Plaintiff's medical bills far exceed $5,000.00. Plaintiff is therefore entitled to judgment against Colony in the sum of $5,000.00, that amount being the liability limits of Coverage C of the Colony policy.

### IV. Conclusion

For the foregoing reasons, Griffin and HPC are entitled to Summary Judgment on the Declaratory Judgment Complaint brought against them by Colony. Furthermore,

PDF created with pdfFactory trial version www.pdffactory.com

Griffin is entitled to Summary Judgment against Colony in the sum of $5,000.00 and costs on Griffin's counterclaim against Colony.

/s/John I. Cottle III
JOHN I. COTTLE III (COT004)
Attorney for Defendant Ronshabus Griffin

OF COUNSEL:
Bowles & Cottle
Attorneys at Law
P.O. Box 780397
2 So. Dubois Avenue
Tallassee, Alabama 36078
(334) 283-6548
Fax: (334) 283-5366
(Email) BowlesandCottle@aol.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 25, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/EMF system which will send notification of such filing to the following:

Algert S. Agricola, Esq.
Jason J. Baird, Esq.
 SLATEN & O'CONNOR, P.C.
Winter Loeb Building
105 Tallapoosa Street
Suite 101
Montgomery, Alabama 36104

Albert C. Bulls III
Attorney at Law
P. O. Box 1233
Tuskegee Institute, Alabama  36087

/s/John I. Cottle III
Of Counsel

12

PDF created with pdfFactory trial version www.pdffactory.com