IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED

2007 MAY -1  P 2: 27

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| COLONY INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 3:06cv00555-MEF |
| | ) | |
| RONSHABUS GRIFFIN; SOUL INN, INC.; | ) | |
| and HPC ENTERTAINMENT GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## COLONY INSURANCE COMPANY'S
## MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff Colony Insurance Company (hereinafter "Colony"), by and through counsel, and pursuant to F.R.C.P. 56 moves this Court to enter summary judgment in its favor in the above-styled case, and states as the basis therefore that there is no dispute of material fact, and Colony is entitled to judgment in its favor as a matter of law. A supporting memorandum of law, with attached evidentiary exhibits, is attached hereto and incorporated herein by reference.

WHEREFORE, Colony Insurance Company prays that this Court will enter summary judgment in its behalf in the above-styled case.

Respectfully submitted this 1st day of May, 2007.

_____
**ALGERT S. AGRICOLA** (ASB 0364-R79A, AGR001)
**JASON J. BAIRD** (ASB BAI035, 9955- D67J)

**OF COUNSEL:**

**SLATEN & O'CONNOR, P.C.**
Winter-Loeb Building, Suite 101
105 Tallapoosa Street
Montgomery, AL 36104
(334) 396-8882 (P)
(334) 396-8880 (F)
jbaird@slatenlaw.com

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

COLONY INSURANCE COMPANY,     )
                                         )

     Plaintiff,                )
                                         )

v.                               )     Case No.: 3:06cv00555-MEF
                                       )

RONSHABUS GRIFFIN; SOUL INN, INC.;  )
and HPC ENTERTAINMENT GROUP, INC.,)
                                       )

     Defendants.             )

## CERTIFICATE OF SERVICE

     I hereby certify that I have served a true and copy of the foregoing by first-class mail, postage prepaid, to the following parties on this the ⎯1ˢᵗ⎯ day of May, 2007:

John I. Cottle, Esq.
Bowles & Cottle
P.O. Box 780397
Tallassee, AL 36078
*Counsel for Ronshabus Griffin*

Albert Bulls, Esq.
P.O. Box 1233
Tuskegee, AL 36087
*Counsel for HPC Entertainment Group, Inc.*


                                       _____
                                       OF COUNSEL

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED

2007 MAY -1  P 2: 27

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

COLONY INSURANCE COMPANY,    )
                                                        )
        Plaintiff,                                 )
                                                        )
v.                                                    )          Case No.: 3:06cv00555-MEF
                                                        )
RONSHABUS GRIFFIN; SOUL INN, INC.;   )
and HPC ENTERTAINMENT GROUP, INC.,)
                                                        )
        Defendants.                            )

**MEMORANDUM OF LAW IN SUPPORT OF
COLONY INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff Colony Insurance Company (hereinafter "Colony"), by and

through counsel, and in further support of its motion for summary judgment, would show unto

this Court as follows:

A.    **STATEMENT OF UNCONTESTED MATERIAL FACTS**

Colony is an insurance company headquartered in Virginia. HPC Entertainment Group,

Inc. ("HPC"), is owned an operated by Howard P. Carter. HPC owns and operates the Soul Inn

nightclub in Tuskegee, Alabama.

Colony issued a commercial general liability ("CGL") insurance policy, Colony policy

no. MP3418338 ("the Colony policy") to HPC on October 13, 2005. (Exhibit 1, Colony

4

policy).  The Colony policy contains an Assault and Battery exclusion, form U0006 (7-02),

which states, in pertinent part:

**Assault and Battery**

This insurance does not apply to damages or expenses due to "bodily injury",
"property damage" or "personal and advertising injury" arising out of or resulting
from:

**(1)**     Assault and Battery committed by any person;

**(2)**     The failure to suppress or prevent assault and battery by any person;

**(3)**     The failure to provide an environment safe from assault and battery or
failure to warn of the dangers of the environment which could contribute
to assault and battery;

**(4)**     The negligent hiring, supervision, or training of any person;

**(5)**     The use of any force to protect persons or property whether or not the
"bodily injury" or "property damage" was intended from the standpoint
of the insured or committed by or at the direction of the insured.

(Exhibit 2).[1]

Ronshabus Griffin is an individual residing in Tuskegee, Alabama.  On November 6,

2005 Griffin was a patron at the Soul Inn nightclub, when another patron discharged a firearm

at the premises, striking Griffin. (Exhibit 3, Complaint in *Griffin v. Soul Inn, Inc.*, Macon

County (Ala.) Circuit Court no. CV-06-77, pp.2-3, ¶¶8-9).  Griffin was hospitalized for his

injuries from the gunshots.  Griffin filed a lawsuit against the Soul Inn, alleging: (1) Assault

and Battery; (2) Negligence/Premises Liability; (3) Negligent and Wanton Acts of fictitious

---

[1] Exhibit 2 is contained within collective Exhibit 1; it is listed as a separate exhibit
for ease of reference.

defendants D, E, F, H, I & J; (4) Negligence/Vicarious Liability; and (5) Negligent Hiring, Training, and Supervision. *Griffin v. Soul Inn, Inc.*, Macon County (Ala.) Circuit Court no. CV-06-77 ("the underlying lawsuit"). (Exhibit 3).

John Brown and Travis McCullough were arrested and indicted for their role in the Soul Inn shooting. Brown was charged with violation of Ala. Code 1975, §13A-11-61(b) (discharging a gun); §13A-6-24 (reckless endangerment), §13A-10-123 (intimidating a witness), and §13A-6-24 (reckless endangerment), all stemming from the November 6, 2005 incident at the Soul Inn nightclub. Travis McCullough was charged with violation of Ala. Code 1975, §13A-11-61(b) (discharging a firearm), and §13A-6-24 (reckless endangerment). (Exhibit 4, Tuskegee (Ala.) Police Department records). Brown and McCullough ultimately were indicted for violations of Ala. Code 1975, §13A-6-20 (first-degree assault) and §13A-6-24 (reckless endangerment) (Exhibits 5 and 6, Alacourt records). Macon County (Ala.) CC-06-118, CC-06-141.

Colony originally named "Soul Inn, Inc.," as a defendant in the instant declaratory action, but moved to dismiss Soul Inn, Inc. on October 5, 2006. Soul Inn, Inc. was dismissed as a defendant on October 6, 2006. (Document 14).


**B.    STANDARD OF REVIEW**

The legal standard for summary judgment is well settled and well known to the Court. Summary judgment is appropriate if this court finds that there exists no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. F.R.C.P.

56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1061 (11th Cir. 1994). A dispute of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). An issue is "material" if it might affect the outcome of the case under governing law. *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of the case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" To avoid summary judgment, the moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-

7

movant's response consists of nothing more than conclusory allegations, the Court must enter summary judgment for the movant. *Peppers v. Coates*, 887 F.2d 1493 (11th Cir. 1989).

On a motion for summary judgment, the Court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the non-movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Mize v. Jefferson City Board of Education*, 93 F.3d 739, 742 (11th Cir. 1996).

## C.    LEGAL ARGUMENT

Colony is entitled to summary judgment, because each claim in the underlying lawsuit is excluded from coverage by the Assault and Battery exclusion in the Colony policy.

An insurance company's duty to defend its insured from suit is determined by the language of the insurance policy and the allegations in the complaint filed against the insured. *Alfa Mutual Insurance Co. v. Morrison*, 613 So.2d 381, 382 (Ala. 1993).[2] Thus, a close review of the Colony policy exclusion and the complaint in the underlying lawsuit is in order.

Colony's Assault and Battery exclusion, form U0006 (7-02),states in pertinent part:

**Assault and Battery**

This insurance does not apply to damages or expenses due to "bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting from:

**(1)**    Assault and Battery committed by any person;

---

[2] This is a diversity case, hence, this Court uses the forum state's substantive law. See *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

**(2)**     The failure to suppress or prevent assault and battery by any person;

**(3)**     The failure to provide an environment safe from assault and battery or failure to warn of the dangers of the environment which could contribute to assault and battery;

**(4)**     The negligent hiring, supervision, or training of any person;

**(5)**     The use of any force to protect persons or property whether or not the "bodily injury" or "property damage" was intended from the standpoint of the insured or committed by or at the direction of the insured.

(Exhibit 2).

Ronshabus Griffin's complaint in the underlying lawsuit alleges claims for: (1) Assault and Battery; (2) Negligence/Premises Liability; (3) Negligent and Wanton Acts of fictitious defendants D, E, F, H, I & J; (4) Negligence/Vicarious Liability; and (5) Negligent Hiring, Training, and Supervision. (Exhibit 3). Coverage for each of these claims is precluded by the Assault and Battery exclusions listed above. Each claim will be examined in turn:

**1.     There is no coverage for Griffin's Assault and Battery claim.**

Count 1 of Griffin's complaint n the underlying lawsuit is Assault and Battery. (Exhibit 3, pp.2-3). This count appears to be aimed at the persons who fired the weapon and not at HPC. However, to the extent that Count 1 in the underlying lawsuit states a claim against HPC, there is no coverage under the Colony policy.

The Colony policy, which states that it does not apply to damages or expenses due to "Assault and Battery committed by any person," (Exhibit 2, ¶1), clearly excludes coverage.

9

Insurance companies are entitled to have their policy contract enforced as written, *Gregory v. Western World Insurance Co.*, 481 So.2d 878 (Ala. 1985), and in the absence of statutory provision to the contrary, insurers have the right to limit their liability by writing policies with narrow coverage.  If there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties. *Porterfield v. Audubon Indemnity Co.*, 856 So.2d 789, 800 (Ala. 2002).

At any rate, Colony notes that both Griffin's and HPC's interrogatory responses concede, "Plaintiff is neither obligated to provide a defense or indemnify H.P.C. Entertainment Group, Inc. for [Count 1 of the underlying lawsuit]." (Exhibit 7, Griffin's interrogatory responses, p.3, ¶5(a); Exhibit 8, HPC's interrogatory responses, p.3, ¶5(a)).  Additionally, Griffin's motion for summary judgment concedes that there is no coverage under the Colony policy for Counts 1 and 5 of the underlying lawsuit. (Document 27-1, p.7, line 5).

### 2.    There is no coverage for Griffin's Negligence/Premises Liability claim.

Count 2 of Griffin's complaint in the underlying lawsuit is Negligence/Premises Liability.  In particular, the complaint alleges that HPC "breached its duty owed to the Plaintiff Ronshabus Griffin, when the Defendant Soul Inn, Inc. negligently and/or wantonly allowed Defendants A, B and C to enter its premises with a loaded firearm and to discharge that firearm into a crowd of patrons of the Soul Inn." (Exhibit 3, p.3, ¶13).  This count states nothing more

10

than a claim against HPC for its failure to prevent the assailants from entering the Soul Inn

nightclub with firearms.

The Colony policy's Assault and Battery exclusion states, in pertinent part:

This insurance does not apply to damages or expenses due to "bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting from:

...

**(2)**    The failure to suppress or prevent assault and battery by any person;

**(3)**    The failure to provide an environment safe from assault and battery or failure to warn of the dangers of the environment which could contribute to assault and battery.

(Exhibit 2, ¶¶2-3).  These exclusions plainly bar coverage for this count.

Griffin and HPC attempt to avoid the exceedingly plain language of these exclusions

by averring that if the shooter accidentally discharged the firearm, the shooter's conduct would

not be "assault and battery," and hence the exclusion would not apply:

Plaintiff seeks to rely upon an endorsement to the policy containing an assault and battery exclusion.  Defendant Griffin concedes that this exclusion would apply if the injury sustained by Griffin were the result of an assault and battery. Under Alabama law, however, an assault and battery requires an intent on the part of the assaulting party to offend or be rude.  If the firearm which injured Griffin was discharged accidentally, negligently, or wantonly, and without an intent to be rude, the discharge would not be an assault and battery and would not fall within the exclusion.  Likewise, if the party wielding the weapon fired intentionally into the air in a "reckless or celebratory" fashion and Griffin were injured, such an act would not be an assault and battery under Alabama law and Griffin claim's against H.P.C. Entertainment Group, Inc., for allowing the same would be covered by the policy.

11

(Exhibit 7, pp.3-4, ¶5(b)).  See also Exhibit 8, pp.3-4, ¶5(b) (same).  Similarly, Griffin's

motion for summary judgment speculates that the shooting could have been accidental, and

contends:

> The gravamen of Griffin's Complaint in Counts II through IV, is that HPC was
> negligent in allowing the shooter to enter the Soul Inn with a loaded weapon.  In
> order for Griffin to successfully prosecute these counts, it is not essential, or
> even necessary, for Griffin to prove an assault and battery occurred.  If the
> negligent act giving rise to liability consisted of HPC (or its agents) allowing
> a loaded firearm to be surreptitiously brought into the Soul Inn, it does not
> matter, as far as HPC's liability to Griffin is concerned, whether Griffin was
> injured because the shooter: (1) committed an assault and battery; (2) allowed
> the weapon to be discharged negligently or wantonly; or (3) intentionally
> discharged the firearm in a celebratory fashion.  The only thing that Griffin must
> prove to recover is that HPC (or its agents) negligently allowed the firearm to
> be brought into the premises, after having undertaken to ban such weapons from
> the club.

(Document 27-1, p.7, lines 18-21 – p.8, lines 1-7).  However, this contention fails, for several

reasons.

First, assault and battery is not necessarily an "intentional" tort.  See, e.g., *Franklin v.

Huntsville*, 670 So.2d 848, 852 (Ala. 1995), citing *Birmingham v. Thompson*, 404 So.2d 589,

592 (Ala. 1981) (holding that an "unskilled" assault and battery would be a negligent assault

and battery).  Colony also notes that the Defendants' speculation that the shooter's actions may

not constitute assault and battery conflicts with Count 1 (Assault and Battery) in the underlying

lawsuit.

Second, the Colony's exclusions operate to bar coverage for any claims of  failing to

suppress or prevent assault and battery by any person, or failing to provide an environment safe

from assault and battery or failure to warn of the dangers of the environment which could

12

contribute to assault and battery. (Exhibit 2, ¶¶2-3). These exclusions plainly operate to exclude coverage for claims for allowing any person to bring a firearm into the insured premises and injure another through discharging the weapon, whether the discharge is classified as "accidental" or "celebratory." Thus, Colony's exclusions bar coverage for HPC's failure to prevent the assailants from bringing weapons into the Soul Inn, regardless of whether the weapons were fired in an "accidental" or "celebratory" manner.

Third, Griffin's speculation that the shooting may have been "accidental" or "celebratory" is completely without factual basis. Griffin has offered no evidence, nor can he, that the shooting was "accidental" or "celebratory." The police statements of the witnesses (including Griffin) overwhelmingly demonstrate that John Brown and Travis McCullough acted intentionally. Brown was charged with violations of Ala. Code 1975, §13A-11-61(b) (discharging a firearm into a building); §13A-6-24 (reckless endangerment); and §13A-10-123 (intimidating a witness) (Exhibit 4, pp.4-4, 4-6, 4-8). Travis McCullough was charged with violation of Ala. Code 1975, §13A-11-61(b) (discharging a firearm into a building); and §13A-6-24 (reckless endangerment) (Exhibit 4, pp.4-17, 4-19). Brown and McCullough were subsequently indicted for violations of Ala. Code 1975, §13A-6-20 (first-degree assault) and §13A-6-24 (reckless endangerment). (Exhibits 5 and 6, "charges" section). Both first-degree assault and reckless endangerment require intentional acts. These counts demonstrate that Brown and McCullough "intended" to discharge their firearms at the Soul Inn nightclub on the night in question.

13

As if further evidence were required, witness statements to the Tuskegee Police Department also supply the requisite intent:

> On Saturday Nov 05, 2005 me and two of my friends went to the Soul Inn night club for Homecoming, while inside of the club John Brown walked by me and shook my hand and pull his shirt up about the same time to show me that he had a gun. John Brown walked to a table where Travis McCullough and about four other guys were standing. Then they walked over to where I was, trying to be funny I guess, then Travis looked at me real hard. Then walked off I thought that they had left the club but they went to the bathroom instead. I went to the bathroom to use it that's when I saw the same guys in the bathroom, while on my way out my friend Johnny walked into the bathroom, I remember Travis saying when I walked into the bathroom that the 380 was not big enough and he needed a 45. After Travis came out of the bathroom and made the statement to Johnny don't be [ expletive deleted ] walking behind me. Travis then pulled a gun out and cocked it, one of the rounds hit the floor, Johnny stated to Travis you might need that one later on. Travis grabbed me and I snatched away from him, my friend Johnny ran and John Brown behind him started shooting. Travis started shooting inside the club that's when I ran.
>
> /s/ Jessie Ferrell
> 11/7/05

(Exhibit 9, Jessie Ferrell's statement).[3]  Ronshabus Griffin's own statement reflected that

> Sometime on November 6, 2005 me and my friends went to the Soul Inn Night Club. I remember that it was after 2 oclock in the morning. My friend went the bar and bought a six pack of beer and after that someone started shooting on the inside of the club back towards the bar everybody got down on the floor. Once people started getting back up the shooting started again. I got hit the first time the shooting started. My friends took me to the hospital in Tallassee Ala. That's all I remember about this incident.

(Exhibit 10, Griffin's statement).  A third witness gave the following statement:

---

[3] Exhibits 9-11 are contained within collective Exhibit 4, they are listed as separate exhibits for ease of reference.

Nov 5 2005 at the soul inn club John Brown and some of his friends brought guns into the club we warn security bot there wasn't [ portions deleted ] another search done. Later that night we walks into the bathroom John Brown and Friend walks in pistol cocked and aiming. Me and my partner turn to run John Brown and friends open up fire as I ran for safety. I can recognize John Brown and Friends if necsseary. (In of statement)

/s/ Johnnie Whitfield

(Exhibit 11, John Whitfield's statement).

In short, the witness statements reflect that on the night of the shooting John Brown and Travis McCullough were brandishing weapons, using the weapons to intimidate nightclub patrons, discussing whether a .380-caliber weapon was powerful enough, Brown and McCullough deliberately pulled their weapons, cocked their weapons, and began firing (Exhibit 9), and walked into the bathroom with weapons cocked and aimed, and opened up fire. (Exhibit 11). In simple terms, Brown and McCullough intended to shoot their firearms and did shoot their firearms. Thus, Griffin's admission that "Colony may avoid coverage under the policy if it can prove that Griffin was, in fact, injured as a result of an assault and battery" (Document 27-1, p.9, lines 4-6) is realized. See also Griffin's and HPC's interrogatory responses, which concede that "this exclusion would apply if the injury sustained by Griffin were the result of an assault and battery." (Exhibit 7, p.3, ¶5(b), lines17-20; Exhibit 8, p.5, ¶5(b), lines 17-20).

Additionally, even if (*arguendo*) Brown and McCullough argue at their upcoming criminal trials that they did not "intend" to fire their weapons, they indisputedly intended to draw and brandish their weapons in the events leading to the shooting. See *Robinson v. Alabama*, 441 So.2d 1045, 1047 (Ala. Cr. App. 1983) ("One who intentionally draws a gun in

15

response to or in anticipation of a confrontation with another is certainly aware of the risk that the gun might discharge; therefore, he cannot be guilty of mere criminal negligence. Appellant is guilty of either murder or manslaughter or he was guilty of nothing at all.").

Fourth, the case Griffin cites as mandating coverage for counts 2 - 4 of the underlying lawsuit, *Acceptance Insurance Co. v. Brown*, 832 So.2d 1 (Ala. 2001), is factually distinguishable from the instant case. In *Acceptance*, store owners Leo and Gloria Brown received word that their store would be burgled that evening. The Browns were guarding the store that evening when a man named Shaun Scott appeared. Leo Brown, who recognized Scott's car, hit Scott in the back of his head with a rifle barrel, and Gloria Brown shot Scott in the abdomen. Scott filed a tort action against the Browns, eventually recovering $50,000. Acceptance denied coverage for Scott's tort action on that policy's assault-and-battery exclusion, and the Browns filed a breach of contract/bad faith claim against Acceptance. Gloria Brown testified that her shooting of Scott was accidental.

The Alabama Supreme Court held that when there is conflicting evidence, the issue of whether there was, in fact, an assault and battery at all is a question for the jury. *Acceptance*, 832 So.2d at 13, citing *Surrency v. Harbison*, 489 So.2d 1097, 1104 (Ala. 1986). Finding that Gloria Brown's testimony that her shooting of Scott was accidental created conflicting evidence of assault and battery, the Court held that the trial court properly submitted the issue to the jury. *Acceptance*, 832 So.2d at 13. The Supreme Court further held that the case of *Gregory v. Western World Insurance Co.*, *supra*, was distinguishable because "the injured party's complaint specifically alleged that one of the codefendants had 'committed an assault

16

and battery on [him],'" and concluded, "unlike the complaint in *Western World*, Scott's complaint did not allege that Scott's injuries arose from an assault and battery; instead, he claimed damages arising from alleged negligence and wantonness on the part of the Browns." *Acceptance*, 832 So.2d at 13.

Thus, *Acceptance* is readily distinguishable from the instant case. First, the Colony policy's assault and battery exclusion is much more restrictive than the exclusion in *Acceptance*. The Colony policy assault-and-battery exclusion incorporates the assault-and-battery exclusions found in *Acceptance*, as well as exclusions for failing to provide an environment safe from assault and battery or failure to warn of the dangers of the environment which could contribute to assault and battery; negligent hiring, supervision, or training; and the use of any force to protect persons or property. (Exhibit 2, ¶¶3-5). Thus, the Colony assault-and-battery exclusion is broader than the Acceptance exclusion. Second, the insured in *Acceptance* testified that the shooting was accidental, whereas there is no indication that John Brown and Travis McCullough did not intend to brandish and fire their weapons at the Soul Inn on the night in question; in fact, all the available evidence is to the contrary. Third, Griffin's complaint in the underlying lawsuit specifically raises a claim of Assault and Battery (Count 1), whereas Scott's complaint against the Browns did not. *Acceptance*, 832 So.2d at 13. In short, *Gregory v. Western World Insurance Co.* is controlling. Like *Western World*, there is no credible evidence suggesting that Griffin's injury did not arise out of an assault and battery, and thus the exclusion is plainly applicable to Griffin's claims.

17

**3.    There is no coverage for Griffin's Negligence and Wantonness claims.**

Count 3 of Griffin's complaint in the underlying lawsuit states negligence and wantonness claims against the persons responsible for security at the Soul Inn nightclub. In particular, the complaint alleges that those persons negligently and wantonly allowed the shooters into the Soul Inn nightclub and negligently and wantonly failed to prevent the shooters from discharging their weapons. (Exhibit 3, p.4, ¶¶16-17). For the reasons set forth with respect to "intent" in Count 2, *supra*, there is no coverage for this count.

The Colony policy's Assault and Battery exclusion states:

This insurance does not apply to damages or expenses due to "bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting from:

...

(2)    The failure to suppress or prevent assault and battery by any person;

(3)    The failure to provide an environment safe from assault and battery or failure to warn of the dangers of the environment which could contribute to assault and battery.

(Exhibit 2, ¶¶2-3).

Whether an insurer has a duty to defend its insureds is determined by the language of the insurance policy and the allegations of the complaint giving rise to the action against the insured. *Ajdarodini v. State Auto Mutual Insurance Co.*, 628 So.2d 312, 313 (Ala. 1993); *Ladner & Co., Inc. v. Southern Guarantee Insurance Co.*, 347 So.2d 100, 102 (Ala. 1977). The language of the complaint and the insurance policy demonstrate that Colony has no duty to defend HPC for this claim in the underlying lawsuit.

18

As with Count 2, Griffin and HPC argue that if the weapons were discharged accidentally on the night in question, then these exclusions would not apply. (Exhibit 7, p.4, ¶5(c), Exhibit 8, p.4, ¶5(c)). However, there is no evidence to support this argument, merely speculation and conjecture. It is well settled that all inferences arising from the undisputed facts should be made in favor of the non-movant, but an inference based upon speculation and conjecture is not reasonable. *Sanders v. City of Union Springs*, 405 F.Supp.2d 1358, 1361 (M.D. Ala. 2005), citing *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985). Additionally, Griffin's motion for summary judgment makes the similar claim that the gravamen of Count 3 is HPC's negligence in allowing the shooter to enter the Soul Inn with a loaded weapon, irrespective of whether the firearm's discharge was intentional, accidental, or celebratory. (Document 27-1, p.7, lines 18-21 – p.8, lines 1-7). However, the plain language of the Colony Assault and Battery exclusion (Exhibit 2, ¶¶2-3) negates Griffin's claim. For factual issues to be considered genuine, they must have a real basis in the record. *Pace v. Cobianco*, 283 F.3rd 1275, 1278 (11th Cir. 2002), quoting *Mize v. Jefferson City Board of Education*, 97 F.3d at 742. There is no basis in the record for Griffin's speculation regarding the shooter's intent. Moreover, as amply demonstrated *supra*, Brown and McCullough intended to use their weapons on the night Griffin was shot.

**4.    Count 4 is derivative of Count 3, and there is no coverage for this claim.**

Count 4 of Griffin's complaint in the underlying lawsuit seeks to hold Soul Inn liable for the negligence of Fictitious Parties D, E, F, H, I & J under the theory of vicarious liability.

19

(Exhibit 3, p.4, line 13). Count 4 does not state a separate cause of action, inasmuch as "vicarious liability" is not a stand-alone tort claim but is derivative of the claims in Count 3. For the reasons addressed *supra*, there is no coverage for Count 4 of Griffin's complaint.

Even if Count 4 was not derivative of Count 3, for the reasons set forth with respect to "intent" in Count 2, *supra*, there is no coverage for this count.

### 5.    There is no coverage for Griffin's Negligent Hiring, Training, and Supervision claims.

Count 5 of Griffin's complaint in the underlying lawsuit alleges that Soul Inn negligently hired, trained, and supervised its employees. (Exhibit 3, ¶24).

There is no coverage for this claim because the Colony policy's Assault and Battery exclusion states, in pertinent part:

> This insurance does not apply to damages or expenses due to "bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting from:
>
> ...
>
> **(4)**    The negligent hiring, supervision, or training of any person.

(Exhibit 2, ¶4).

Griffin and HPC's discovery responses contend that if the weapons were discharged accidentally on the night in question, then these exclusions would not apply. (Exhibit 7, p.4, ¶5(c), Exhibit 8, p.4, ¶5(c)). For the reasons set forth with respect to "intent" in Count 2, *supra*, there is no merit to this contention and no coverage for this count. Additionally,

20

Griffin's motion for summary judgment concedes, as it must, that there is no coverage for

Count 5. (document 27-1, p.7, line 5).

**6.    Colony is entitled to summary judgment as to Griffin's counterclaim.**

Last, Colony is entitled to summary judgment as to Griffin's counterclaim that he is

entitled to $5,000 in medical-payments from Colony under the Colony policy's Coverage C.

Coverage C states, in pertinent part:

**COVERAGE C MEDICAL PAYMENTS**

**1.    Insuring Agreement**

    **a.**    We will pay medical expenses as described below for "bodily injury" caused by an accident:
        **(1)**    On premises you own or rent;

    ...

**2.    Exclusions**

We will not pay expenses for "bodily injury":

    ...

    **g.**    **Coverage A Exclusions**

    Excluded under Coverage A.

(Exhibit 12, p.12-7, Coverage C, ¶¶1(a), (g)).[4]

---

[4] Exhibit 12 is contained within collective Exhibit 1, it is listed as a separate exhibit for ease of reference.

Griffin does not qualify for the $5,000 medical payment because he was not an intended beneficiary of the insurance contract between HPC and Colony, and because he is otherwise excluded under Coverage A.

>   **A.      Griffin was not a third-party beneficiary of the insurance contract.**

Griffin's claim for $5,000 in medical payments under the Colony policy is, at heart, a claim for breach of contract. Griffin tacitly acknowledges as much by contending that he was a third-party beneficiary under the Colony policy. (Document, 27-1, p.10, line 9). In order for Griffin to recover on a breach of contract claim, he must prove the existence of a valid and enforceable contract, the terms and conditions of the contract, a breach thereof, and resulting damages. *Baxter v. Jones*, 529 So. 2nd 217, 222 (Ala. 1988).

Griffin has no standing to sue for breach of contract, because he is not a party to the contract. It is axiomatic that one who is not a party to, or in privity with, a contract cannot sue for its breach. *ARC v. Higginbotham*, 643 So.2d 952, 954 (Ala. 1994); *Twine v. Liberty National Life Insurance Co.*, 311 So.2d 299 (Ala. 1975).

Nor is Griffin a third-party beneficiary to the Colony insurance policy. To recover under a third-party beneficiary theory, the complainant must show: (1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; (2) that the complainant was the intended beneficiary of the contract; and (3) that the contract was breached. *The Collins Co. v. City of Decatur*, 533 So.2d 1127, 1132 (Ala. 1988), citing *Sheetz, Aiken & Aiken, Inc. v. Spann, Hall, Ritchie, Inc.*, 512 So.2d 99, 101-02 (Ala. 1987). The party claiming standing to sue as a third-party beneficiary of a contract bears

the burden of establishing that the contracting parties intended to bestow a benefit upon it. *Weathers Auto Glass v. Alfa*, 619 So.2d 1328, 1329 (Ala. 1993).

Griffin cannot claim third-party beneficiary status under the insurance contract between Colony and HPC because he cannot demonstrate that Colony or HPC intended to bestow a direct benefit upon him under the insurance contract, and because any benefit to Griffin would be an incidental benefit, as opposed to direct benefit.

In determining the parties' intent, the court must look to the contract itself, because, while the intent of the parties controls in construing a written contract, "the intention of the parties is to be derived from the contract itself, where the language is plain and unambiguous." *H.R.H. Metals, Inc. v. Miller*, 833 So.2d 18, 24 (Ala. 2002) citing *Loerch v. National Bank of Commerce of Birmingham*, 624 So.2d 552, 553 (Ala. 1993). As the Alabama Supreme Court held: "courts must look to the surrounding circumstances of the transaction only when the contract is unclear as to whether the contracting parties intentionally conferred upon a third person a direct benefit; consequently, the court's inquiry may stop when it determines from the face of the contract that the parties did not intend to confer upon the third person a direct benefit." *Collins Co. v. City of Decatur*, 533 So.2d at 1132. It is only where a contract provision is found to be ambiguous that it may become necessary to consider the surrounding circumstances and the construction the parties gave the language in order to determine the intent of the contracting parties. *H.R.H. Metals, Inc.*, 833 So.2d at 24, citing *GTE Mobilnet of Birmingham, Inc.*, 730 So.2d 150 (Ala. 1999). Griffin must demonstrate that Colony and HPC intended, at the time the contract was created, to bestow a direct benefit upon a third

23

party. *Collins*, 533 So.2d at 1132 (emphasis added). It is not the "primary purpose of the contract" which determines whether the non-signatory is a third-party beneficiary to a contract; it is whether the contracting parties intended, at the time of contracting, to bestow a direct benefit upon the non-signatory. *Collins*, 533 So.2d at 1132. The intent of the contracting parties, as expressed in the contract, determines whether a nonsignatory is a third-party beneficiary. *Ex parte Stamey*, 776 So.2d 85, 92 (Ala. 2000). In this case, Griffin has offered no evidence that Colony and HPC intended to bestow a benefit upon him when Colony issued the Colony policy to HPC.

Further, even if Colony and HPC had intended, at the time that Colony issued the Colony policy to HPC, to create a benefit for Griffin, the inquiry would not stop there. A plaintiff who is claiming standing to sue as a third-party beneficiary under a contract must establish that the parties intended, upon execution of the contract, to bestow a <u>direct</u> benefit, as opposed to an <u>incidental</u> benefit, upon the third party. *Weathers Auto Glass v. Alfa*, 619 So.2d 1328, 1329 (Ala. 1993) (emphasis added). One stands in position of a third-party beneficiary only if he is an intended beneficiary of the original agreement, and not merely one who derives some incidental benefit. *Watson v. Water Works Board*, 480 So.2d 1190, 1193 (Ala. 1985). Even if Colony and HPC intended to confer some benefit upon Griffin, it is clear that the benefit to Griffin would be incidental, rather than direct.

24

**B.    The Assault-and-Battery exclusion excludes medical payment coverage to Griffin.**

Further, even if, *arguendo*, Colony and HPC had intended to confer a direct benefit upon Griffin at the time the Colony policy was issued, the Assault and Battery exclusion would preclude Griffin from being entitled to the medical-payment coverage under Coverage C. Exclusion (g) to Coverage C states that there is no medical payments for any persons "excluded under Coverage A." (Exhibit 12, p.12-7, Coverage C, ¶1(g)).

Coverage A is the bodily injury and property damage agreement between Colony and HPC. (Exhibit 12, p.12-1, Coverage A). However, Coverage A is modified by the Assault and Battery exclusion, which states:

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** and **SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions** is amended and the following added:

**Assault and Battery**

This insurance does not apply to damages or expenses due to "bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting from:

**(1)**    Assault and Battery committed by any person;

**(2)**    The failure to suppress or prevent assault and battery by any person;

**(3)**    The failure to provide an environment safe from assault and battery or failure to warn of the dangers of the environment which could contribute to assault and battery;

**(4)**    The negligent hiring, supervision, or training of any person;

25

**(5)**    The use of any force to protect persons or property whether or not the "bodily injury" or "property damage" was intended from the standpoint of the insured or committed by or at the direction of the insured.

(Exhibit 2). Hence, the Assault and Battery exclusion, which is the basis of Colony's motion for summary judgment as to Counts 1 - 5 of Griffin's complaint in the underlying lawsuit, modified the Exclusions section of the Colony policy's Coverage A. Accordingly, for the same reasons why there is no coverage to HPC for Griffin's claims in the underlying lawsuit, Griffin is not entitled to claim third-party status to obtain $5,000 in medical payments under the Colony policy.

When a contract is unambiguous and plain in its meaning the court cannot alter the agreement by construction. *French Auto Supply, Inc. v. Anglin*, 567 So.2d 312, 313 (Ala.Civ.App. 1990). In this case, the insurance contract between Colony and HPC plainly and unambiguously disclaimed medical payments under Coverage C for all persons excluded under Coverage A. Griffin being excluded under Coverage A, as modified by the Assault and Battery exclusion, he cannot claim entitlement to benefits under Coverage C. Therefore, he is not entitled to the $5,000 medical payment benefit found in Coverage C of the Colony policy, and Colony is entitled to summary judgment as to Griffin's counterclaim.

26

## D.    CONCLUSION

The Colony policy has an explicit and unambiguous assault and battery exclusion. The evidence proffered by Colony establishes that John Brown and Travis McCullough intentionally brandished, drew, and fired their weapons at the Soul Inn nightclub on the night of November 6, 2005. Neither Griffin nor HPC have presented any evidence that the firearms were discharged inadvertently.

WHEREFORE, for the above-stated reasons and citations to authority, plus the attached evidentiary exhibits, Plaintiff Colony Insurance Company prays that this Court will enter an order determining that Colony has no duty to defend HPC Entertainment Group, Inc., in the underlying lawsuit. Colony additionally prays that this Court will grant such further, other, or different relief to which it may be equitably entitled, whether specifically prayed herein or not.

Respectfully submitted this 1st day of May, 2007.

_____

**ALGERT S. AGRICOLA** (ASB 0364-R79A, AGR001)
**JASON J. BAIRD** (ASB BAI035, 9955- D67J)

**OF COUNSEL:**

**SLATEN & O'CONNOR, P.C.**
Winter-Loeb Building, Suite 101
105 Tallapoosa Street
Montgomery, AL 36104
(334) 396-8882 (P)
(334) 396-8880 (F)
jbaird@slatenlaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **COLONY INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 3:06cv00555-MEF** |
| | ) | |
| **RONSHABUS GRIFFIN; SOUL INN, INC.;** | ) | |
| **and HPC ENTERTAINMENT GROUP, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and copy of the foregoing by first-class mail, postage prepaid, to the following parties on this the 1ˢᵗ day of May, 2007:

John I. Cottle, Esq.
Bowles & Cottle
P.O. Box 780397
Tallassee, AL 36078
*Counsel for Ronshabus Griffin*

Albert Bulls, Esq.
P.O. Box 1233
Tuskegee, AL 36087
*Counsel for HPC Entertainment Group, Inc.*


_____
OF COUNSEL

F:\Gen Litigation\Colony Group\Soul Inn\Pleading\ColonyMSJ.wpd