But if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss resulting from that Covered Cause of Loss.

(2) Any loss caused by or resulting from:

   (a) Damage or destruction of "finished stock"; or

   (b) The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

(3) Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

(4) Any increase of loss caused by or resulting from:

   (a) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

   (b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

(5) Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

(6) Any other consequential loss.

b. **Leasehold Interest Coverage Form**

(1) Paragraph **B.1.a.** Ordinance Or Law, does not apply to insurance under this Coverage Form.

(2) We will not pay for any loss caused by:

   (a) Your cancelling the lease;

   (b) The suspension, lapse or cancellation of any license; or

   (c) Any other consequential loss.

c. **Legal Liability Coverage Form**

(1) The following exclusions do not apply to insurance under this Coverage Form:

   (a) Paragraph **B.1.a.**, Ordinance Or Law;

   (b) Paragraph **B.1.c.**, Governmental Action;

   (c) Paragraph **B.1.d.**, Nuclear Hazard;

   (d) Paragraph **B.1.e.**, Utility Services; and

   (e) Paragraph **B.1.f.**, War And Military Action.

(2) The following additional exclusions apply to insurance under this Coverage Form:

   (a) **Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

      (i) Your assumption of liability was executed prior to the accident; and

      (ii) The building is Covered Property under this Coverage Form.

   (b) **Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

C. **Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated.

1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

   a. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

   (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

   (2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

d. Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

   However, this limitation does not apply to:

   (1) Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

   (2) Business Income coverage or Extra Expense coverage.

e. Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

f. Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

2. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

   a. Valuable papers and records, such as books of account, manuscripts, abstracts, drawings and card index systems, including those which exist on film, tape, disc, drum, cell or other data processing, recording or storage media. Valuable papers and records do not include prepackaged software programs.

   b. Animals, and then only if they are killed or their destruction is made necessary.

   c. Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

      (1) Glass; or

      (2) Containers of property held for sale.

   d. Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

      However, this limitation does not apply:

      (1) If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

      (2) To Business Income coverage or to Extra Expense coverage.

3. The special limit shown for each category, a. through d., is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are:

   a. $2,500 for furs, fur garments and garments trimmed with fur.

   b. $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

   c. $2,500 for patterns, dies, molds and forms.

   d. $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

   These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

   This limitation, C.3., does not apply to Business Income coverage or to Extra Expense coverage.

4. We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

   a. Results in discharge of any substance from an automatic fire protection system; or

   b. Is directly caused by freezing.

   However, this limitation does not apply to Business Income coverage or to Extra Expense coverage.

D. **Additional Coverage – Collapse**

The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in D.1. through D.5. below.

1. With respect to buildings:

   a. Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;

   b. A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;

   c. A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;

   d. A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

2. We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if the collapse is caused by one or more of the following:

   a. The "specified causes of loss" or breakage of building glass, all only as insured against in this Coverage Part;

   b. Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

   c. Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

   d. Weight of people or personal property;

   e. Weight of rain that collects on a roof;

   f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in 2.a. through 2.e., we will pay for the loss or damage even if use of defective material or methods, in construction, remodeling or renovation, contributes to the collapse.

The criteria set forth in 1.a. through 1.d. do not limit the coverage otherwise provided under this Causes of Loss Form for the causes of loss listed in 2.a., 2.d. and 2.e.

3. With respect to the following property:

   a. Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

   b. Awnings, gutters and downspouts;

   c. Yard fixtures;

   d. Outdoor swimming pools;

   e. Fences;

   f. Piers, wharves and docks;

   g. Beach or diving platforms or appurtenances;

   h. Retaining walls; and

   i. Walks, roadways and other paved surfaces;

   if the collapse is caused by a cause of loss listed in 2.b. through 2.f., we will pay for loss or damage to that property only if:

   a. Such loss or damage is a direct result of the collapse of a building insured under this Coverage Form; and

   b. The property is Covered Property under this Coverage Form.

4. If personal property abruptly falls down or caves in and such collapse is not the result of collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

   a. The collapse was caused by a Cause of Loss listed in 2.a. through 2.f. above;

   b. The personal property which collapses is inside a building; and

   c. The property which collapses is not of a kind listed in 3. above, regardless of whether that kind of property is considered to be personal property or real property.

   The coverage stated in this Paragraph 4. does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

   Collapse of personal property does not mean cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

5. This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

E. **Additional Coverage Extensions**

1. **Property In Transit**

    This Extension applies only to your personal property to which this form applies.

    a. You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

    b. Loss or damage must be caused by or result from one of the following causes of loss:

        (1) Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

        (2) Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the road bed.

        (3) Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

    c. The most we will pay for loss or damage under this Extension is $5,000.

    This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

2. **Water Damage, Other Liquids, Powder Or Molten Material Damage**

    If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

3. **Glass**

    a. We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

    b. We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

    This Coverage Extension, **E.3.**, does not increase the Limit of Insurance.

F. **Definitions**

"Specified Causes of Loss" means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

1. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

    a. The cost of filling sinkholes; or

    b. Sinking or collapse of land into man-made underground cavities.

2. Falling objects does not include loss or damage to:

    a. Personal property in the open; or

    b. The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

3. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam.

## POLICYHOLDER DISCLOSURE
## NOTICE OF INSURANCE COVERAGE FOR CERTIFIED ACTS OF TERRORISM

You are hereby notified that, under the Terrorism Risk Insurance Act of 2002, effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act.

The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States: to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Coverage under your policy may be affected as follows:

You should know that coverage provided by this policy for losses caused by certified acts of terrorism is partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The premium charged for this coverage is provided below and does not include any charges for the portion of loss covered by the federal government under the Act.

You should also know that your policy does **not** provide coverage for acts of terrorism that are not certified by the Secretary of the Treasury.

### Election or Rejection of Certified Terrorism Insurance Coverage

You must elect or reject this coverage for losses arising out of certified acts of terrorism, as defined in Section 102(1) of the Act, before the effective date of this policy. Your coverage cannot be bound unless our representative has received this form signed by you on behalf of all insureds with all premiums due.

☐ Coverage Election.
  I hereby elect to purchase coverage for certified acts of terrorism, as defined in Section 102(1) of the Act for a prospective annual premium of $100.00. I understand that I will not have coverage for losses arising from any uncertified acts of terrorism.
  CR

☑ Coverage Rejection.
  I hereby elect not to purchase coverage for certified acts of terrorism, as defined in Section 102(1) of the Act. I understand that I will not have coverage for all losses arising from certified or non-certified acts of terrorism.

| | |
|---|---|
| X _[signature]_ Policyholder Signature<br>Must be person authorized to sign for all insureds. | Colony Insurance Company<br>Insurance Company |
| Howell P. Carter<br>Print Name | To Be Assigned  MP 3418338<br>Policy Number |
| X HPC Ent'_shed dba Soul Inn Social Club<br>Named Insured | Submission Number<br>01003 |
| 10/18/2005<br>Date | Producer Number |
| | GARRISON INSURANCE BROKERS INC (AL)<br>Producer Name |
| | PO BOX 1685<br>Street Address |
| | PELHAM, AL 35124<br>City, State, Zip |

Producer shown above is the wholesale insurance broker your local insurance agent used to place your insurance coverage with us. Please discuss this Disclosure with your agent before

TRIA2002Notice 1202


COLONY

Page 1 of 1

Policy Change Number 2

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

IL 12 01 11 85

## POLICY CHANGES

MAY 1 5 2006

| POLICY NO. | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| MP3418338 | 03/30/2006 | Colony Insurance Company |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| HPC ENTERTAINMENT, INC. DBA SOUL INN SOCIAL CLUB | GARRISON INS. BROKERS, INC. |

**COVERAGE PARTS AFFECTED**

All Coverage Parts

### CHANGES

In consideration of the return premium of $1,858.00 plus $111.48 6% AL S/L tax, it is hereby understood & agreed the policy is cancelled pro-rata effective 03-30-06 12:01AM for non-payment of premium to the finance company.

05/09/06 krs

Authorized Representative Signature

GU 269 (11-85)
IL 12 01 11 85

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983
Company

Page 1 of 1

## NOTICE OF CANCELLATION, NONRENEWAL OR CHANGE IN POLICY PREMIUM/COVERAGE

**U.S. POSTAL SERVICE CERTIFICATE OF MAILING**
PS Form 3817 - Facsimile

Affix postage and postmark.

**INSURANCE COMPANY**
Received From: Colony Insurance Co.

One piece of ordinary mail addressed to:

**NAME AND ADDRESS OF INSURED**
RPC Entertainment, Inc. dba
Soul Inn Social Club
P.O. Box 773
Tuskegee, AL 36087

FOR USE AS A "CERTIFICATE OF MAILING." MAY BE USED FOR DOMESTIC AND INTERNATIONAL MAIL. DOES NOT PROVIDE FOR INSURANCE—POSTMASTER.

**KIND OF POLICY:** Package
**POLICY NO.:** MP 3418338
**CANCELLATION, EXPIRATION OR CHANGE WILL TAKE EFFECT AT:** 5-06-06 (DATE) 12:01 AM (HOUR-STANDARD TIME)
**DATE OF MAILING:** 4-24-06
**ISSUED THROUGH AGENCY OR OFFICE AT:** Garrison Ins. Brokers, Inc. Pelham, AL

(Applicable item marked [X])

**Cancellation** [ ] You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that your insurance will cease at and from the hour and date mentioned above.
See the "Important Notices" section below for other information that may apply.

[X] You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that your insurance will cease at and from the hour and date mentioned above for the reason(s) stated in the "Important Notices" section below.
See the "Important Notices" section below for other information that may apply.

**Premium Adjustment**
[ ] Unearned premium will be returned to in accordance with state law and the terms of the policy.
[ ] Enclosed is $ _____, being the amount of return premium at pro rata rate for the unexpired term of this policy.
[ ] A bill for the premium earned to the time of cancellation will be forwarded in due course.
[ ] The excess of paid premium, if any, above the pro rata premium for the expired time, (if not tendered) will be refunded upon demand.
[ ] Other: _____

**Nonrenewal** [ ] You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that the above mentioned policy will expire effective at and from the hour and date mentioned above and the policy will NOT be renewed.
See the "Important Notices" section below for other information that may apply.

[ ] You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that the above mentioned policy will expire effective at and from the hour and date mentioned above and the policy will NOT be renewed for the reason(s) stated in the "Important Notices" section below.
See the "Important Notices" section below for other information that may apply.

**Change In Policy Premium/ Coverage** [ ] You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that, with respect to the above noted policy, the policy premium will be increased and/or the policy coverage will be changed as follows, effective on the date indicated above:

**Important Notices** [X] Reason(s) for cancellation or nonrenewal (reason(s) stated only if above marked item indicates such):
non-payment of premium

[ ] **Replacement Insurance Information:** If you are unable to obtain replacement coverage from another insurance company, you may be eligible for insurance through the organization designated below. For further information, please contact your agent or broker or the following organization:

[ ] **Consumer Report:** In compliance with the Fair Credit Reporting Act (Public Law 91-508) and the Consumer Credit Reform Act of 1996, you are hereby informed that the action taken above is being taken wholly or partly because of information contained in a consumer report from the following consumer reporting agency: (Name) _____ (Phone Number) _____
(Address) _____
Please see the back of this form for a disclosure of your rights under this federal law.

AUTHORIZED REPRESENTATIVE

[ ] **(Duplicate of Notice of Cancellation or Nonrenewal to Lienholder)**
You are hereby notified that the agreement under the Loss Payable Clause payable to you as Lienholder, which is a part of the above policy, issued to the above insured, is hereby cancelled or nonrenewed in accordance with the conditions of the policy, said cancellation or nonrenewal to be effective on and after the hour and date mentioned above.

**(Duplicate of Notice of Cancellation or Nonrenewal to Mortgagee)** **DATE OF MAILING:** _____
[ ] Effective _____ at _____ (Standard Time), we hereby cancel or nonrenew the Mortgagee Agreement which is made part of the above mentioned policy and also the above mentioned policy issued to the insured named above covering on _____
at _____
and made payable to you as mortgagee (or trustee), in the event of loss.

**U.S. POSTAL SERVICE CERTIFICATE OF MAILING**
PS Form 3817 - Facsimile

Affix postage and postmark.

**INSURANCE COMPANY**
Received From: Colony Insurance Co.

AUTHORIZED REPRESENTATIVE

**USAGE INSTRUCTIONS**
See reverse side for usage and mailing instructions.

One piece of ordinary mail addressed to:

**NAME AND ADDRESS OF LIEN-HOLDER OR MORTGAGEE**
Alabama Exchange Bank
102 Northside St.
Tuskegee, AL 36083

FOR USE AS A "CERTIFICATE OF MAILING." MAY BE USED FOR DOMESTIC AND INTERNATIONAL MAIL. DOES NOT PROVIDE FOR INSURANCE—POSTMASTER.

**CERTIFICATION OF MAILING**

(If notice of cancellation, nonrenewal or change in policy premium and/or coverage is mailed to the insured, complete the following.)
I hereby certify that I personally mailed in the U.S. Post Office at the place and time stamped hereon, a notice of cancellation, nonrenewal or change in policy premium and/or coverage to the Insured, an exact carbon copy of which appears above, and at said time received from the U.S. Postal Service the receipt made a part hereof or attached hereto.

Signed this 24th day of April 2006
(MONTH) (YEAR)
Signature _____

(If notice of cancellation or nonrenewal is mailed to the Lienholder or Mortgagee, complete the following.)
I hereby certify that I personally mailed in the U.S. Post Office, at the place and time stamped hereon, a notice of cancellation or nonrenewal to the Lienholder or Mortgagee, an exact carbon copy of which appears above, and at said time received from the U.S. Postal Service the receipt made a part hereof or attached hereto.

Signed this _____ day of _____ _____
(MONTH) (YEAR)
Signature _____

| PREMIUM $ | RETURN PREMIUM $ | EXPIRATION | PREMIUM DUE $ |

GU 9811d (Ed. 1-00) UNIFORM INFORMATION SERVICES, INC. © 1997     COMPANY'S COPY

Pursuant to the Consumer Credit Reform Act of 1996, effective September 30, 1997, you are informed that:

The consumer reporting agency identified on the front of this form did not make any decisions regarding the stated insurance policy. Therefore, the consumer reporting agency would not be able to provide you with the specific reasons why the insurance company is taking the present action.

You have the right to obtain within 60 days of the receipt of this notice a free copy of your consumer report from the consumer reporting agency which has been identified on the front of this form.

You have the right to dispute inaccurate information by contacting the consumer reporting agency directly. Once you have directly notified the consumer reporting agency of your dispute, the agency must, within a reasonable period of time reinvestigate and record the current status of the disputed information. If after reinvestigation, such information is found to be inaccurate or unverifiable, such information must be promptly deleted from your records. If the reinvestigation does not resolve the dispute, you may file a brief statement setting forth the nature of the dispute with the consumer reporting agency. Your filed statement will then be included or summarized in any subsequent consumer report containing the information in question.

For complete information regarding the Federal Consumer Credit Protection Law please refer to The Code of the Laws of the United States of America, Title 15, Chapter 41, Subchapter III, (15 U.S.C. §1681 et seq.).

## USAGE INSTRUCTIONS

Use for giving notice of cancellation, nonrenewal or change in policy premium/coverage of a policy providing automobile, fire and multiple peril, liability, property other than fire and multiple peril, workers' compensation or fidelity and surety policies. Use this form when state-specific notices or terms do not apply, however the terms of the policy or the law provide that written notice must be given.

For Notice of Cancellation, mark
(1) the first box when reasons do not need to be provided under the terms of the policy or the law.
(2) the second box when reasons must be provided under the terms of the policy and/or the law. Provide reason(s) in the "Important Notices" section.

For Notice of Nonrenewal, mark
(1) the first box when reasons do not need to be provided under the terms of the policy or the law.
(2) the second box when reasons must be provided under the terms of the policy and/or the law. Provide reason(s) in the "Important Notices" section.

For Notice of Change in Policy Premium/Coverage, mark the box and provide information about the premium change or the change in the terms of the coverage under the policy.

Important Notices:
Reasons for Action, mark the first box in the "Important Notices" section if the terms of the policy or the law provides that reasons for cancellation or nonrenewal must be provided in the notice sent to the insured. State clear and specific reasons so that a person of average intelligence may understand the reason for the action. Do not state generic reasons such as "Underwriting reasons."
Replacement Insurance Information, mark the second box in the "Important Notices" section if the law provides that information regarding assigned risk plans must be provided to the insured. Provide the name and address of applicable assigned risk plan, including phone number if applicable under law.
Consumer Report, mark the third box in the "Important Notices" section if the action is taken based wholly or partly on information from a consumer report. Fill in name, address and phone number (toll free number if multi-state operation) of consumer credit reporting agency.

### Sending Notice by Registered or Certified Mail

For Registered Mail or Certified Mail, Notice of Cancellation, Nonrenewal or Change in Policy Premium/Coverage to the Insured and if required, to the Mortgagee or Lienholder, the appropriate U.S. Postal Service receipt must be attached hereto and no postage stamp should be affixed to the receipt reproduced hereon.

Policy Change
Number 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

IL 12 01 11 85

## POLICY CHANGES

RECEIVED
NOV 17 2005

| POLICY NO. | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| MP3418338 | 10/13/2005 | Colony Insurance Company |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| HPC ENTERTAINMENT, INC. DBA SOUL INN SOCIAL CLUB | GARRISON INS. BROKERS, INC. |

**COVERAGE PARTS AFFECTED**

All Coverage Parts

### CHANGES

In consideration of the additional premium of $1,000.00 plus $60.00 6% AL S/L tax, it is hereby understood & agreed forms U028P(09/98), UCG0033(06/05), CG0305(01/96), CG2806(01/96) and U006LL(06/05) are added to the policy.

Form U087(07/02) is deleted from the policy.

11/11/05 krs

Authorized Representative Signature

GU 269 (11-85)
IL 12 01 11 85

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983
Company

Page 1 of 1

# LIQUOR LIABILITY COVERAGE DECLARATIONS

It is agreed this coverage forms a part of Policy No.: MP3418338

Named Insured: HPC ENTERTAINMENT, INC. DBA
SOUL INN SOCIAL CLUB

LIMITS OF LIABILITY:

$100,000     Each Common Cause / Aggregate

The above limits are included within and shall not increase the General Aggregate limit specified in the General Liability Declarations. The above limit is also the most we will pay for injury/damages sustained for Liquor Liability and the expenses involved in defending the insured against such claims.

| Classification | Code No. | Premium Basis | Rate | Advance Premium |
|---|---|---|---|---|
| Tavern | 16815 | r)50,000 | 6.02 | $1,000 |

Total Premium This Coverage Part ____$1,000____

Forms / Endorsements Applicable:
See Schedule of Forms and Endorsements - U001

U028P (09/98)                                                              Page 1 of 1

Company

# LIQUOR LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – LIQUOR LIABILITY COVERAGE

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

   b. This insurance applies to "injury" only if:

      (1) The "injury" occurs during the policy period in the "coverage territory"; and

      (2) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "injury" or claim, knew that the "injury" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "injury" occurred, then any continuation, change or resumption of such "injury" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Injury" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim, includes any continuation, change or resumption of that "injury" after the end of the policy period.

   d. "Injury" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim:

      (1) Reports all, or any part, of the "injury" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "injury"; or

      (3) Becomes aware by any other means that "injury" has occurred or has begun to occur.

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected Or Intended Injury**

      "Injury" expected or intended from the standpoint of the insured.

   b. **Workers' Compensation And Similar Laws**

      Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

c. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" or "temporary worker" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" or "temporary worker" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the "injury".

d. **Liquor License Not In Effect**

"Injury" arising out of any alcoholic beverage sold, served or furnished while any required license is suspended or after such license expires, is cancelled or revoked.

e. **Your Product**

"Injury" arising out of "your product". This exclusion does not apply to "injury" for which the insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

f. **Other Insurance**

Any "injury" with respect to which other insurance is afforded, or would be afforded but for the exhaustion of the limits of insurance.

This exclusion does not apply if the other insurance responds to liability for "injury" imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.

g. **Contractual Liability**

"Injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**SUPPLEMENTARY PAYMENTS**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

3. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

4. All costs taxed against the insured in the "suit".

5. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

6. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

7. Expenses incurred by the insured for first aid administered to others at the time of an event to which this insurance applies.

These payments will not reduce the limits of insurance.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

    a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

    a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

        (1) "Injury":

            (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

            (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph (1)(a) above; or

            (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above.

        (2) "Property damage" to property:

            (a) Owned or occupied by, or

            (b) Rented or loaned

            to that "employee", any of your other "employees", by any of your partners or members (if you are a partnership or joint venture), or by any of your members (if you are a limited liability company).

    b. Any person or organization having proper temporary custody of your property if you die, but only:

        (1) With respect to liability arising out of the maintenance or use of that property; and

        (2) Until your legal representative has been appointed.

    c. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

    a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

    b. Coverage does not apply to "injury" that occurred before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a. Insureds;

    b. Claims made or "suits" brought; or

    c. Persons or organizations making claims or bringing "suits".

2. The Aggregate Limit is the most we will pay for all "injury" as the result of the selling, serving or furnishing of alcoholic beverages.

3. Subject to the Aggregate Limit, the Each Common Cause Limit is the most we will pay for all "injury" sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage to any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – LIQUOR LIABILITY CONDITIONS

1. **Bankruptcy**

    Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Injury, Claim Or Suit**

    a. You must see to it that we are notified as soon as practicable of an "injury" which may result in a claim. To the extent possible, notice should include:

        (1) How, when and where the "injury" took place;

        (2) The names and addresses of any injured persons and witnesses; and

        (3) The nature and location of any "injury".

    b. If a claim is made or "suit" is brought against any insured, you must:

        (1) Immediately record the specifics of the claim or "suit" and the date received; and

        (2) Notify us as soon as practicable.

        You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    c. You and any other involved insured must:

        (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        (2) Authorize us to obtain records and other information;

        (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury" to which this insurance may also apply.

    d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

    No person or organization has a right under this Coverage Part:

    a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

    b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance**

   If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

   a. **Primary Insurance**

   This insurance is primary. Our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **b.** below.

   b. **Method Of Sharing**

   If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

   If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. **Premium Audit**

   a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

   b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

   c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations**

   By accepting this policy, you agree:

   a. The statements in the Declarations are accurate and complete;

   b. Those statements are based upon representations you made to us; and

   c. We have issued this policy in reliance upon your representations.

7. **Separation Of Insureds**

   Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

   a. As if each Named Insured were the only Named Insured; and

   b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us**

   If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**SECTION V – DEFINITIONS**

1. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

2. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

    b. International waters or airspace, but only if the "injury" occurs in the course of travel or transportation between any places included in a. above; or

    c. All other parts of the world if the "injury" arises out of:

       (1) Goods or products made or sold by you in the territory described in a. above; or

       (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business

    provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

3. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

4. "Executive Officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

5. "Injury" means all damages, including damages because of "bodily injury" and "property damage", and including damages for care, loss of services or loss of support.

6. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

7. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

8. "Suit" means a civil proceeding in which damages because of "injury" to which this insurance applies are alleged. "Suit" includes:

    a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

9. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

10. "Your product":

    a. Means:

       (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

          (a) You;

          (b) Others trading under your name; or

          (c) A person or organization whose business or assets you have acquired; and

       (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b. Includes:

       (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product", and

       (2) The providing of or failure to provide warnings or instructions.

    c. Does not include vending machines or other property rented to or located for the use of others but not sold.

COMMERCIAL GENERAL LIABILITY
CG 03 05 01 96

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

LIQUOR LIABILITY COVERAGE PART

## SCHEDULE

Location    1315 SOUTH CHURCH ST.; TUSKEGEE, AL

| Coverage | Amount and Basis of Deductible |
|---|---|
| Liquor Liability | $ 500    PER CLAIM |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for "injury", however caused): -

A. Our obligation under the Liquor Liability Coverage to pay damages on your behalf applies only to the amount of damages in excess of any deductible amount stated in the Schedule above.

B. You may select a deductible amount on either a per claim or a per common cause basis. Your selected deductible applies to the Liquor Liability Coverage and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

1. **PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies under Liquor Liability Coverage, to all "injuries" sustained by any one person or organization.

2. **PER COMMON CAUSE BASIS.** If the deductible amount indicated in the Schedule above is on a per common cause basis, that deductible amount applies under Liquor Liability Coverage to all damages because of "injury" as the result of the selling, serving or furnishing of any alcoholic beverage to any one person, regardless of the number of persons or organizations who sustain damages.

C. The terms of this insurance, including those with respect to:

1. Our right and duty to defend the insured against any "suit" seeking those damages; and

2. Your duties in the event of an "injury", claim or "suit"

apply irrespective of the application of the deductible amount.

D. We may pay any part or all of the deductible amount to effect settlement of any claims or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

CG 03 05 01 96    Copyright, Insurance Services Office, Inc., 1994    Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

CG 28 06 01 96

# LIMITATION OF COVERAGE TO INSURED PREMISES

This endorsement modifies insurance provided under the following:

LIQUOR LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | | Policy No. |
|---|---|---|
| 10/13/2005 | 12:01 A.M. standard time | MP3418338 |
| Named Insured<br>HPC ENTERTAINMENT, INC. DBA<br>SOUL INN SOCIAL CLUB | | Countersigned by |

(Authorized Representative)

## SCHEDULE

Description and Location of "Insured Premises":
1315 SOUTH CHURCH ST.
TUSKEGEE, AL 36063

TAVERN

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A. This insurance only applies to damages arising out of your "insured premises."
B. The following definition is added to the DEFINITIONS Section:
   "Insured premises" means:
   1. The premises shown in the Schedule; and
   2. Any premises you acquire during the policy period for use in manufacturing, distributing, selling, serving or furnishing alcoholic beverages if:
      a. You notify us within 30 days after the acquisition, and
      b. You have no other valid and collectible insurance applicable to the loss.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ASSAULT AND BATTERY EXCLUSION – LIQUOR LEGAL LIABILITY

This endorsement modifies insurance provided under the following:

LIQUOR LIABILITY COVERAGE PART

**SECTION I – LIQUOR LIABILITY COVERAGE, 2. Exclusions** is amended and the following added:

h. **Assault and Battery**

"Injury" arising out of or resulting from:

(1) Assault and Battery committed by any person;

(2) The failure to suppress or prevent assault and battery by any person;

(3) The failure to provide an environment safe from assault and battery or failure to warn of the dangers of the environment which could contribute to assault and battery;

(4) The negligent hiring, supervision, or training of any person;

(5) The use of any force to protect persons or property whether or not the "injury" was intended from the standpoint of the insured or committed by or at the direction of the insured.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.